FREEMAN, J.,
delivered tbe opinion of the court:
Bill and cross-bill.
Jones had contracted with one Goodwin, in August or September, 1872, to build him a brick dwelling house on lots Eos. 43 and 44, in Edgefield. Goodwin contracted with one Perry to do the brick work on said house. Perry exchanged his contract with Bush, the complainant, who did the work, and files this bill to enforce his mechanics’ lien for balance claimed to be due for his work under the contract.
The contract with Goodwin seems to have been in writing, its terms fixed, with specifications as to -the work to be done. The price for brick work was to be $10 per thousand, for furnishing materials and laying- the same.
Complainant alleges that he was unwilling to rely on Goodwin for his pay; that he went to Jones before commencing work, stated the fact, and thereupon Jones specially agreed to pay him for all the work he .might do under the contract. ■ He then avers that he went on to fux*-nish material, brick, and mortar, to wit: One hundred and ninety-three thousand brick, and build the house in accordance with said ‘‘contract and specifications.” He thus claims, that in September, 1872, by special contract, de~ *226 fendant employed and engaged bim to do other extra work on or about the house not embraced in the original contract and specifications, but was a separate and distinct contract, made directly with Jones. Under this contract he claims to have put up five thousand eight hundred and twenty brick. lie claims the defendant would owe, under the original contract $1,930, and on the other $-. He also puts in a claim growing out of an assumed payment by Nichol, on another contract, for which a receipt had been once given, showing it to' have been paid to Bush by Jones, or, perhaps, by Goodwin, on the Jones contract.
Jones, in his answer, admits the work was so: let to Bush, and* that he was to do it at the price stated, but insists the work was to be first-class work; claims that he made a special contract with Bush; that if he did a No. 1 job, and satisfied respondent in every respect, that he would see him paid, otherwise he was not to be responsible, to him for his pay, or any part of it, and that these were the conditions of his liability; that he, Bush, was to do' a No. 1 job, satisfying the defendant with the same. He denies the express contract for extra work, but says he had made a contract with Goodwin for an extra wall, which was spoken of as an extra job outside the original contract, and this contract was reduced to writing between him and Goodwin. He claims that when the work was finished, it was not satisfactory to him, and that he declined to receive it. He then makes his answer a cross-bill, charging the contract to be as stated above; that the question of its being first-class work had been referred to one Watkins, and that he decided it was not such work, and that he was greatly injured in the actual value of his house, owing to the bungling and un-workmanlike manner in which it is built and use of inferior materials, and by additional time and expense of building, and by the discredit brought on the character of the house. This damage he claims to have been $2,000, and he asks it be allowed him.
We will not undertake to go on in detail the large mass *227 of testimony (much of it irrelevant), which we find in this record, in order to show the basis of our conclusions. We content ourselves by stating: 1st. We are satisfied from the testimony in the case that Bush only undertook faithfully to carry out and perform the contract of Goodwin, which was read over to him by Jones, or so- much of it, probably, as bore on the question of the brick work; that he, no doubt, was charged by Mr. Jones very earnestly at the time that he should expect a first-class job, and assured him in return that he would give him a satisfactory joib, but that Buch did not undertake himself, as contracting, to do anything more than to do the brick work, as contracted by Goodwin, and tins was the extent of his contract. We have no doubt that Mr. Jones honestly thinks what occurred between them to have amounted to a special contract, such as he states and. relies on, but he is a party to the suit, and very naturally, under the excitement of the litigation, gives more emphasis to the facts supporting this view than a disinterested and cooler witness would find in them. This is strengthened and corroborated by the fact that all the payments made by Jones were made on orders given by Goodwin, the original contractor. Be this as it may, we assume the above as the contract of the parties. We may say here that this written contract, with its specifications, being, no doubt, in possession of Mr. Jones, is kept out of the record and not introduced. Some inference must be drawn against Mr. Jones on this account, as he had the means in his power to have shown unmistakably by this document what he had contracted to have, and light would have been thrown on Bush’s undertaking if we had this contract before us.
W e presume this contract was to be met in its requirements by Mr. Bush, and as it is not, before us, we assume that contract was what the law would imply to be the duty of the undertaker — that is, the work was to. be done in a workmanlike manner, out of good material, according to *228 the style of the art, as adapted to such a building as was being constructed.
In this view we find from the testimony that the work was not probably exactly up tO' the standard, but had some deficiencies in it, though we think they are much exaggerated. The proof on this question is such that, if left tc the jury and decided by them either way [the verdict], would be sustained by this court as having ample evidence to support [it]. It is evident, too, that the work was injured by being allowed to remain some weeks uncovered, exposed to rain and freezes that must have damaged it — to what extent, we cannot definitely say. The complainant having failed to do the work in a workmanlike manner, having performed the contract, but not according to its terms, is entitled to recover of Jones for such work, not upon the contract, but his “liability is such as may be found due ex aequo ex bono,” in the language of this court in Pettee v. Tenn. Manuf’g Co., 1 Sneed, 386, “for the defectively executed work.” This compensation is to be limited by the value and extent of the benefit conferred. Ibid., 385. In other words, we hold the measure of the complainant’s right of recovery is the value of the work done, as done, and which the defendant enjoys the benefit of. This value should be ascertained from testimony of parties, experts qualified to judge of such work, in such a building as it was when the work was completed.
Por instance, it is shown that probably some of the walls were not as plumb as they should have been, but were crooked to some extent; there is also proof tending to show that the partition walls were not joined to the main walls as completely as they ought to have been; now the difference between the value of such a wall, in such a house, constructed of the material found in this, and one without these defects, is the measure of the right of complainant’s recovery, and so of the whole job of brick work performed by Bush.
Jones, we think, ié clearly liable on these principles, for *229 the proof shows that he not only saw the work as it went on, but actually paid about 15 per cent, of the contract price during the time without making any objection. It would obviously have been the duty of Jones to have objected to the work at the time, and not allow the party to go on receiving part of the consideration under the idea that, the work was satisfactory, and find it appropriated and used by the defendant, who, at the same time, refuses to pay for it, on the ground that he has not accepted it. Smith’s Lead, Cases, vol. 2, p. 48, sec. 3. It is too late for this to be said. We therefore direct a reference to the clerk and master on remanding the case, to make the inquiry on the above basis. This reference will include all the work done by Bush on the house. This rule will substantially reach the same result as that arrived at by the chancellor. We give complainant the actual value of the work to the defendant, and not the contract price agreed on, because he has failed to do such work as the contract required. This value is to be ascertained, as said by the chancellor, by estimating work done according to the contract, at $10 per thousand, and the difference in value in the work from such work as was contracted to be done — that is, job done in a workman like manner.
As to the claim of defendant for damages, we see no evidence of any special damages to demand a reference. He, in effect, gets his real damages by the reduction of the price of the work from the contract price to- the real value. This would be what he would be entitled to in a cross action, unless special damages were shown. If such work as he contracted for had been worth more than he had contracted to give for it, and he had got a good bargain, if complied with, he would be entitled, by way of recoupment, to the difference -between the price agreed to be paid and the value of the work above this sum, probably. But the proof shows that $10 per thousand was the price of such work, so that there can be no- claim in this direction.
The defendant having the work pays only its real value, *230 and complainant gets only the value of such work as he has done, and not what he contracted to do, because of failure on his part in strict performance of his contract. The actual number of the brick laid is the measure of the work done.
As to the Nichol matter, we think the chancellor correct in his conclusion that it must be treated as a payment by Jones; Goodwin got the money from Nichol to pay off Bush’s hands. This was understood by Jones to be a loan from Nichol to Goodwin, which Jones was to furnish Goodwin the money to replace in a few days. Tie did furnish the $150 in a few days after. The money was paid by Goodwin through IVIitchell, his foreman, to' Bush, and a receipt given as received from Jones, under the contract. Jones had no notice of any improper appropriation of the money, and paid it to Goodwin in good faith, as evidenced by the act of the other party in giving the receipt. He cannot now require that Jones shall pay it over.
We think the chancellor very properly divided the costs in the court below, and we do the same here, as both parties have unnecessarily incumbered this record by a large mass of irrelevant proof, and much prolixity in examination of witnesses that might well have been avoided.
A decree will be drawn in accordance with this opinion, and case remanded for execution of the reference herein ordered.